[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
April 26, 2007
THOMAS K. KAHN
CLERK

_____

No. 06-13171
Non-Argument Calendar
_____

D. C. Docket No. 02-61697-CV-KMM

LUIS FELIPE RODRIGUEZ, JR.,

Plaintiff-Appellee,

versus

BROWARD SHERIFF'S OFFICE, Ken Jenne,
PEREZ, Deputy,

Defendants-Appellants,

THELON, Officer,
KELVIN GREENLEAF, Sgt.,

Defendants.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

**(April 26, 2007)**

Before DUBINA, CARNES and FAY, Circuit Judges.

PER CURIAM:

Luis Felipe Rodriguez Jr., a Florida state prisoner, filed a pro se 42 U.S.C.

§ 1983 complaint against Broward County Sheriff Ken Jenne and Deputy Beverly

Perez, alleging, among other things, false imprisonment.[1]  In this interlocutory

appeal, Jenne and Perez argue that the district court erroneously denied in part their

motions for summary judgment on qualified immunity grounds concerning

Rodriguez's complaint.  For the reasons set forth more fully below, we reverse the

district court's denial of summary judgment for Jenne and Perez only as to

Rodriguez's § 1983 claim of false imprisonment and related pendent state claims.

## I.  Background

Rodriguez's complaint alleged, among other things, that he was falsely

imprisoned in violation of his due process rights and applicable state law.

Specifically, he indicated that he should have been released from imprisonment

seven days earlier than his actual date of release, which was June 6, 2002, because,

on January 23, 2002, the capias had been recalled in case number

01020850TC10A, and case number MM01000865 had been nolle processed on

---

[1]Rodriguez named the following defendants in his complaint: the Broward Sheriff's Office Department of Community Control ("Department"), Sheriff Ken Jenne, and Deputies Greenleaf, Dee, Thelon, and Beverly Perez.  The district court dismissed the Department, Deputy Greenleaf, and Deputy Dee from the case, and later granted summary judgment in favor of Deputy Thelon.  Accordingly, the parties to the instant appeal are Rodriguez, Sheriff Jenne, and Deputy Perez.

May 29, 2002. Rodriguez also submitted the following evidence in support of his complaint: (1) his "booking report," issued on January 9, 2002, which indicated that he was charged with battery on a law enforcement officer and resisting arrest, case number 0113856CF10A, and driving with a suspended license, case number 01020850TC10A; (2) a "County Court Disposition Order in and for Broward County, Florida," which indicated that case number MM0100865 had been nolle processed in May; (3) an order of the county court judge granting Rodriguez's motion to recall capias in case number 01020850TC; (4) an order of the county court judge reinstating the bond in case number 0113856CF10A, which was dated January 10, but the court did not identify the year; and (5) three inmate grievance forms Rodriguez filed, one dated May 31, 2002, but signed on June 4, 2002, the second dated June 1, 2002, and the third dated June 5, 2002, in which he indicated that he was entitled to be released because his bonds were paid and that capias had been recalled on one of his charges.

Jenne and Perez answered Rodriguez's complaint, denying his allegations and asserting the defense of qualified immunity. They each filed motions for summary judgment and submitted the following evidence in support. First, the affidavit of Sergeant Robert Greetham, an investigator for the Broward County Sheriff's Office, Office of Professional Compliance, indicated that Greetham

3

conducted an investigation of Rodriguez's allegation of delayed release. Greetham attested that, as a result of his investigation, he learned that Rodriguez had attended a special magistrate hearing on June 4, 2002 regarding case number 01020850TC10A. He indicated that, according to the Jail Management System ("JMS"), Rodriguez's charge status for case number 01020850TC10A had been dismissed on June 5, 2002. He further asserted that, in Rodriguez's hard card file, he found a facsimile of Judge Berman's order recalling capias in case number 01020850TC10A, which order was dated January 23, 2002. He attested that the order indicated that courtesy copies had been sent to a law firm, the Office of the State Attorney, and the Clerk of the Circuit Court. He also indicated that the facsimile of the order was sent to Donna Tvenstrup, an employee at the Confinement Status Unit, on June 5, 2002. Greetham thus concluded that there was no indication that the Broward Sheriff's Office received a copy of the order recalling capias prior to June 5, 2002, and that, once it received the order, it released Rodriguez from custody on June 6, 2002. He attached to his affidavit a copy of Rodriguez's "inmate grievance form" concerning his delayed release, which was dated May 31, 2002, but was signed on June 4, 2002. The grievance form indicated that the response to Rodriguez's complaint, provided on June 5,

4

2002[2], stated that Rodriguez "still [had] an open charge."

Second, in Jenne's affidavit, he asserted that he did not know Rodriguez, nor did he have any direct or personal knowledge of the allegations contained in Rodriguez's complaint. Third, Perez's affidavit indicated that she did not recall that Rodriguez ever showed her any documentation that demonstrated that he was entitled to release from custody. Perez further attested that, if Rodriguez would have advised her that he was overdue to be released, she "would have informed [her] sergeant and [she] would have advised Mr. Rodriguez to send a written request to Confinement Status asking them to look into the matter."

Rodriguez responded to Jenne's and Perez's motions for summary judgment, arguing that the Broward Sheriff's Office did receive notice of the order recalling capias. Rodriguez asserted that the magistrate judge signed all his orders "in open court in front of the clerk of courts" and that the Sheriff had a staff of court liaisons, who reviewed the judge's orders. However, Rodriguez submitted no new evidence in support of his response.

The magistrate judge recommended denying summary judgment to Jenne and Perez on qualified immunity grounds, finding that: (1) the law of this Circuit

---

[2]The actual date on the grievance form is "5/6/02." However, that date must be an error because a response to the complaint, which was signed on June 4, 2002, could not have been responded to in the proceeding month. Sergeant Greetham's affidavit supports this conclusion, as it indicates that the response was given on June 5, 2002.

indicated that an officer could not negligently ignore an inmate's complaints that he is entitled to release and that a sheriff could be held liable on the basis of a "constructive notice" theory; and (2) there were issues of material fact "regarding when Rodriguez was entitled to release, and when the sheriff's office was aware of it." The district court adopted that magistrate's report and recommendation, over Jenne's and Perez's objections. The court found that there existed an issue of material fact as to "what extent, if at all, Defendants Perez and Jenne were made aware that Rodriguez was entitled to release on May 29, 2002." The court further determined that Perez's "bare allegation" that she had no authority to effectuate Rodriguez's release did not establish that, had she reported Rodriguez's complaints, the proper authorities would have ignored her report. As to Jenne's eligibility for qualified immunity, the court found that there was a question of fact as to whether the order recalling capias ever came to the attention of Perez or Jenne by way of Perez. Thus, the court granted Jenne's and Perez's motions for summary judgment in part and denied them in part as to Rodriguez's § 1983 claim of illegal detention or false imprisonment.

## II. Discussion

Jenne and Perez argue on appeal that they were entitled to qualified immunity because they acted in their discretionary capacities and did not violate

any of Rodriguez's clearly established constitutional rights. They specifically assert that the district court erroneously interpreted this Court's precedent in Whirl v. Kern, 407 F.2d 781 (5th Cir. 1969) and Kelly v. Curtis, 21 F.3d 1544 (11th Cir. 1994). With regard to Jenne, as sued in his individual capacity, they contend that he did not work in the Broward County Jail and had no knowledge of Rodriguez's presence in the jail or his release date. They argue that there exists no constitutional duty for a sheriff, who has no personal involvement in inmate release decisions, routinely to check on the custody status of each inmate. They further maintain that the theory that Jenne, as sheriff, should be charged with constructive notice of the documents that entitled Rodriguez to release, and may have been seen by Jenne's employees, was not clearly established as of the date of Rodriguez's injury. They also assert that the record demonstrates that the Sheriff's Office did not receive a copy of the order recalling capias until June 5, 2002, the order indicated that the Sheriff's Office was not sent a copy, and the order itself did not direct that Rodriguez be released. As to Perez, they argue that, even assuming that Rodriguez showed her all of the documents that he believed entitled him to release, those documents did not establish on their face that Rodriguez was entitled to release on May 29, 2002. They also contend that the law was not clearly established that Perez, who did not work in the confinement status unit, had a

7

constitutional duty to investigate Rodriguez's request for release.

"We review de novo the legal basis for a district court's denial of summary judgment on qualified immunity, viewing the facts in the light most favorable to the plaintiff." Kelly, 21 F.3d at 1550. In order to state a claim for relief under § 1983, "a plaintiff must show that he or she was deprived of a federal right by a person acting under color of state law." Griffin v. City of Opa-Locka, 261 F.3d 1295, 1303 (11th Cir. 2001). However, "[t]he defense of qualified immunity completely protects government officials performing discretionary functions from suit in their individual capacities unless their conduct violates clearly established statutory or constitutional rights of which a reasonable person would have known." Cottone v. Jenne, 326 F.3d 1352, 1357 (11th Cir. 2003).[3]

In denying Jenne's and Perez's motions for summary judgment on qualified immunity grounds, the district court relied on our decision in Kelly to support its conclusion that qualified immunity offered the defendants no protection because there was a question of material fact as to whether Perez ever received notice of the order recalling capias in Rodriguez's case. In Kelly, the defendant was arrested

---

[3]Jenne and Perez allege that they were performing discretionary functions as sheriff and a deputy of the Broward County Sheriff's Office at the time of Rodriguez's alleged injury. Rodriguez did not dispute this contention before the district court or on appeal. Thus, there is no dispute that Jenne and Perez were acting in their discretionary capacity during the incident at issue.

8

and charged with possession of cocaine, but two days after his arrest, the state crime lab reported that the substance in the defendant's possession was not cocaine. Kelly, 21 F.3d at 1547-48. The crime lab sent the report to the police department, and specifically to Detective Gibson, but the prosecutors were not made aware of the report. Id. at 1547-49. One year after Kelly's arrest, during which time he had been incarcerated, the prosecutor dismissed the charge, citing that the substance was not a controlled substance, and Kelly was released from custody. Id. at 1549. Kelly thereafter filed a § 1983 action against Detective Gibson and two other detectives, alleging false arrest, malicious persecution, and illegal detention. Id. The detectives moved for summary judgment on qualified immunity grounds and the district court denied the motion. Id.

Concerning Kelly's illegal detention claim against the other two detectives, we determined that the district court erred in finding that the question of when the crime lab report came to the attention of those two detectives presented an issue of material fact because "Kelly presented no evidence whatsoever that the report in question ever 'came to the attention' of [the two detectives]." Id. at 1551 (emphasis in original). We thus held that the detectives were entitled to qualified immunity because they "had neither actual knowledge of the report nor a clearly established duty to ferret it out." Id. at 1552. In so holding, we discussed our

9

earlier decision in Whirl, in which a sheriff's office had received notice that the prosecutor had dismissed all charges against a defendant, but the office neglected to process the dismissal, leaving the defendant in jail for an additional nine months. Id. at 1551-52; see also Whirl, 407 F.2d at 785-86. In Whirl, we held that the sheriff was liable for false imprisonment due to his "constructive notice" that the prosecutor had dismissed the charges. Whirl, 407 F.2d at 793. However, we clarified in Kelly that "Whirl does not require police officers to track down every lead; it merely holds that they cannot negligently ignore a notice specifically sent to them requiring that a detainee be released." Kelly, 21 F.3d at 1551-52.

Applying Kelly to the facts of the instant case, the district court erroneously denied summary judgment on qualified immunity grounds to Jenne and Perez. Here, as in Kelly, the court incorrectly determined that an issue of material fact remained concerning when Perez and Jenne had notice of the order recalling capias in Rodriguez's case. A careful review of the record reveals that Rodriguez never alleged that he specifically informed Perez or Jenne of his entitlement to release. Rodriguez merely claimed that he was entitled to release on May 29, that he had filed three internal grievances in the Broward County Jail, and that he had informed unnamed officers that he no longer had charges pending against him. Perez denied that she had ever received notification from Rodriguez regarding his

10

custody status and, in response, Rodriguez only argued that the Broward County Sheriff's Office did receive notice of the order recalling capias because the magistrate judge signed all his orders "in open court in front of the clerk of courts" and that the Sheriff had a staff of court liaisons, who reviewed the judge's orders. On these facts, especially given that Rodriguez did not make a specific allegation that he provided notice directly to Perez, the instant case is similar to Kelly in that the evidence did not establish that Perez had actual notice of the order recalling capias and Rodriguez's entitlement to release on May 29, 2002. See Kelly, 21 F.3d at 1552.

Consequently, Jenne cannot be charged with constructive notice through Perez's knowledge because Perez had no notice herself. See Whirl, 407 F.2d at 792. Moreover, Jenne did not violate a clearly established constitutional right of Rodriguez's due to his constructive notice of Rodriguez's entitlement to release, as gained through the Broward Sheriff's Office's and the unnamed officer's notice from Rodriguez's internal grievances, because, upon receiving the grievances on June 1 and 4, and verifying the veracity of Rodriguez's allegations on June 5, the Sheriff's Office effectuated Rodriguez's release. See id. (explaining that a sheriff's "duty to his prisoner is not breached until the expiration of a reasonable time for the proper ascertainment of the authority upon which his prisoner is

11

detained," and holding that nine months was an unreasonable amount of time).

In accordance with <u>Kelly</u>, and based upon the allegations and evidence in the instant record, Jenne and Perez neither had actual or constructive knowledge of Rodriguez's entitlement to release, nor did they have "a clearly established duty to ferret it out." <u>See</u> <u>Kelly</u>, 21 F.3d at 1552. As such, they were entitled to qualified immunity from Rodriguez's claim that they ignored his requests for release and thereby illegally detained him for seven days. In light of the foregoing, we reverse the district court's denial of summary judgment as to Rodriguez's § 1983 claim of false imprisonment and related pendent state claims against Jenne and Perez.

**REVERSED and REMANDED.**